

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 15, 2010

**BY HAND**

The Honorable Thomas P. Griesa
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/10
```

      Re:    **United States v. Pascual Delacruz Peguero**
                **10 Cr. 070 (TPG)**

Dear Judge Griesa:

        The defendant is scheduled to be sentenced in the above-referenced case on December 21, 2010 at 3:00 p.m. The Government respectfully submits this letter in advance of that sentencing. The Government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 57 to 71 months, which is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

### Background

**A.    The Indictment**

        The Indictment charges the defendant with illegally reentering the United States from on or about January 12, 2010 after having been removed from the United States subsequent to a conviction for the commission of an aggravated felony, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). On May 21, 2010, the defendant pleaded guilty before your Honor to the sole count of the Indictment.

**B.    The Offense**

        The defendant is a citizen of the Dominican Republic and has never been a citizen of the United States. (United States Probation Department's Presentence Investigation Report ("PSR") ¶ 6). On or about June 5, 1997, he was convicted in Westchester County Supreme Court, White Plains, of Criminal Possession of a Controlled Substance in the Third Degree with Intent to Sell, a Class B felony. (PSR ¶ 7). On or about February 2, 2004, the defendant was removed from the United States to the Dominican Republic. (PSR ¶ 7). On December 5, 2009, a confidential informant ("CI") told an investigator with the United States Attorney's Office that the

*To be filed. Thomas P. Griesa*
*USDJ   12/15/10*

The Honorable Thomas P. Griesa
December 15, 2010
Page 2 of 6

defendant was employed by a business in the Bronx. On January 12, 2010, agents from Immigration and Customs Enforcement ("ICE") went to the business identified by the CI and arrested the defendant. (PSR ¶ 9). On January 12, 2010, the defendant was fingerprinted in connection with that arrest and those fingerprints matched the fingerprints taken in connection with the defendant's February 19, 1997 conviction and the defendant's February 2, 2004 warrant of removal. (PSR ¶ 10). The defendant then admitted to ICE that he re-entered the United States in or about October 2008 when he traveled by car to the Port Authority in New York, NY. (PSR ¶ 9). Prior to his reentering the United States, the defendant had not obtained permission from the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States. (PSR ¶ 11). The defendant has been in federal criminal custody since January 12, 2010.

### C.    The Defendant's Criminal History

As noted above, the defendant was convicted on or about February 19, 1997, in Westchester County Supreme Court, White Plains, of Criminal Possession of a Controlled Substance in the Third Degree with Intent to Sell, a Class B felony. (PSR ¶ 7). That conviction and its accompanying sentence of 88 months to 22 years term of imprisonment result in three criminal history points. See U.S.S.G. § 4A1.1(a).

The defendant was also convicted on or about July 18, 1997 in Supreme Court, Bronx County, State of New York, for conspiracy in the second degree to perform a Class A felony, which is a Class B felony, in violation of New York Penal Law Section 105.15. The defendant was sentenced to a term of imprisonment of 88 months to 22 years. (PSR ¶¶ 34, 35). The term was concurrent with the term of imprisonment imposed for the February 19, 1997 conviction. The defendant was paroled to immigration on or about October 30, 2003. Pursuant to U.S.S.G. § 4A1.2(a)(2), the February 19, 1997 and July 18, 1997 convictions are counted separately, because the sentences were imposed for offenses that were separated by an intervening arrest. Pursuant to U.S.S.G. § 4A1.1(a), the July 18, 1997 sentence results in 3 criminal history points.

The defendant was also convicted on or about November 24, 1982 in Bronx County Criminal Court, State of New York, for attempted possession of stolen property in the third degree, a Class B misdemeanor, in violation of New York Penal Law Section 165.40. Based upon the information available to the Government at this time, it appears that the defendant was sentenced to pay a fine. Pursuant to U.S.S.G. § 4A1.2(e)(3), this sentence is not counted toward the defendant's criminal history category, as the sentence was not imposed within ten years of the commencement of the instant offense.

The defendant committed the instant offense while on parole for the February 19, 1997 and July 18, 1997 convictions. Pursuant to U.S.S.G. § 4A1.1(d), 2 criminal history points

The Honorable Thomas P. Griesa
December 15, 2010
Page 3 of 6

are added.

As a result, the defendant has eight criminal history points.

**D.     The Presentence Investigation Report and Guidelines Calculation**

The United States Probation Office (the "Probation Office") has calculated a total offense level of 21 and a Criminal History Category of IV (PSR ¶ 81), and the Government agrees with these calculations. Accordingly, the Guidelines range is 57 to 71 months' imprisonment.

## DISCUSSION

**A.     Applicable Law**

The United States Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, as set forth below, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

>   (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B)    to afford adequate deterrence to criminal conduct;

The Honorable Thomas P. Griesa
December 15, 2010
Page 4 of 6

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

  The history and characteristics of the defendant make a Guidelines sentence appropriate in this case. Prior to his removal, the defendant committed two serious narcotics offenses. In connection with the February 19, 1997 conviction, the defendant possessed heroin with intent to sell. In connection with the July 18, 1997 conviction, the New York State Division of Parole searched a residence pursuant to a search warrant. The defendant and his accomplices were located inside the residence, from which five plastic bags containing heroin, two boxes containing 131 bundles of heroin, and a 9 millimeter Luger handgun were recovered. The seriousness of these crimes is highlighted by the 88 months to 22 years term of imprisonment the defendant received for the offenses, each to run concurrent, which ultimately led to his deportation. Those consequences did not deter the defendant from violating the laws of the United States, as he illegally re-entered the country while on parole from these offenses.

  Accordingly, in light of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), a sentence within the Guidelines Range is necessary to satisfy at least three of the statutory sentencing objectives: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, see 18 U.S.C. § 3553(a)(2)(A); (2) the need to afford adequate deterrence to criminal conduct, see 18 U.S.C. § 3553(a)(2)(B); and (3) the need to protect the public from further crimes of the defendant, see 18 U.S.C. § 3553(a)(2)(c).

**B.  The Guidelines Range Does Not Overstate The Seriousness Of The Offense.**

  The defendant contends that the illegal reentry Guidelines and enhancements are unjustified because they not the product of empirical research. (Def. Ltr. 1 at 5.)[1] This argument should be rejected; the Guideline enhancement at issue here closely parallels Congress's statutory framework and is the result of reasoned analysis by the United States Sentencing Commission.

  Instead of applying a uniform enhancement for all prior felonies, the illegal reentry Guidelines provide enhancements according to gradations based on the seriousness of the

---

[1] Two letters were submitted on the defendant's behalf. The first was prepared by Mark Gombiner of the Federal Defenders of New York ("Def. Ltr. 1"). The second letter was prepared by Amelio Marino, whom the defendant retained on November 6, 2010. ("Def. Ltr. 2").

The Honorable Thomas P. Griesa
December 15, 2010
Page 5 of 6

predicate felony. This framework mirrors the structure of the statute, which reflects Congress's determination that an alien who was deported subsequent to the commission of an aggravated felony and who then unlawfully reenters the United States commits a much more serious offense than an alien without any criminal history who reenters unlawfully.

Under the statute, a violation of Title 8, United States Code, Section 1326(a) carries a maximum term of imprisonment of 2 years for an alien convicted of illegally reentering the United States, whereas Section 1326(b)(1) provides a maximum term of imprisonment of 10 years for an illegal reentrant previously deported subsequent to the commission of a felony, and the maximum penalty increases to 20 years if the prior offense was an aggravated felony under Section 1326(b)(2).

The Guidelines are similarly structured: Simple felonies receive a 4-level enhancement, aggravated felonies receive an 8-level enhancement, felony drug trafficking offenses for which the sentence imposed did not exceed 13 months receive a 12-level enhancement, and felony drug trafficking offenses for which the sentence imposed was more than 13 months (like the defendant's prior offense for criminal sale of a controlled substance) receive a 16-level enhancement. See U.S.S.G. §2L1.2(b)(1). The Sentencing Commission's creation of graduated offense levels for illegal reentrants based on their prior criminal record is directly and firmly rooted in the illegal reentry statute enacted by Congress. It also reflects the Sentencing Commission's considered judgment, and it has a sound basis in logic and reason: the more danger a particular illegal reentrant poses in our society, the more serious the infraction of illegally returning here should be.

Illegal re-entry offenses have not been singled out and treated differently from other offenses in the Sentencing Guidelines. Other Guidelines provisions also look to the defendant's prior criminal history in order to determine the applicable offense level. See, e.g., U.S.S.G. §2K1.3 (trafficking in and possession of explosive materials); U.S.S.G. §2K2.1 (firearms possession and trafficking); U.S.S.G. §2L1.1 (alien smuggling); U.S.S.G. §2L2.1 (immigration and naturalization fraud to assist others); U.S.S.G. §2L2.2 (immigration and naturalization fraud to assist self); U.S.S.G. §4B1.1 (career offender); U.S.S.G. §4B1.4 (armed career criminal). So, too, do other statutory provisions. See, e.g., Title 18, United States Code, Section 924(e)(1) (providing a fifteen-year mandatory minimum for persons who violate Title 18, United States Code, Section 922(g) and have three previous convictions of certain types of offenses); Title 21, United States Code, Section 841(b)(1) (providing for various enhanced mandatory minimums and maximum sentences, depending on prior drug convictions). Accordingly, the U.S.S.G. §2L1.2 enhancement is appropriate and applicable here.

The Honorable Thomas P. Griesa
December 15, 2010
Page 6 of 6

### C. No Variance Is Warranted Based On The Reason For The Defendant's Illegal Return To The United States

The defendant next argues for a below-Guidelines sentence because he "was motivated by legitimate family concerns." (Def. Ltr. 1 at 7). But the desire to be with and take care of one's family, which is common to so many illegal reentry defendants, does not merit a non-Guidelines sentence. Moreover, extensive family ties in the United States, sympathetic as they may be, provide the defendant with a powerful incentive to commit the crime of illegal reentry again.

As Judge Kaplan observed after noting an illegal reentry defendant's "very sympathetic" personal circumstances, "that's true of hundreds of thousands of people. . . . If judges are swayed unduly by the appealing personal stories of individual people who reenter illegally and don't impose appropriate sentences, the incentives for coming illegally are only increased and the problem gets worse." United States v. Pullay-Daquilema, S1 09 Cr. 218 (LAK), transcript dated Oct. 22, 2009, at 6-7 (imposing Guidelines sentence of 41 months' imprisonment in illegal reentry case where defendant's only criminal history was 90 day sentence for attempted robbery in the third degree); see also United States v. Ticas, 05 Cr. 586 (RMB), transcript dated Nov. 17, 2005, at 26 (noting that it "is most often the case" that illegal reentry defendants have "come back to be with family and to help family"), aff'd, 219 Fed. Appx. 44 (2d Cir. 2007).[2]

### D. No Variance Is Warranted Based On The Fact That The Defendant Will Be Incarcerated Pending Deportation

To the extent the defendant suggests that he should receive credit for time he will spend in Immigration and Customs Enforcement ("ICE") custody (Def. Ltr. 1 at 7), this argument should be rejected. "[T]ime . . . spent in ICE custody is considered administrative in nature, and not 'official detention' for purposes of 18 U.S.C. § 3585." Cuevas v. United States, Nos. 07 Civ.

---

[2] The defendant also argues for a downward departure pursuant to U.S.S.G. § 5H1.6 because his "family ties and responsibilities make him eligible for a downward departure." (Def. Ltr. 2 at 1. In support, the defendant notes that deportation will separate him from his partner and three children, all of whom are United States citizens. (Def. Ltr. 2 at 1). This argument is unpersuasive. Assuming that the defendant's partner and three children remain in the United States, he will be separated from them regardless of the length of his sentence, since he will be deported at the end of his sentence. Moreover, U.S.S.G. § 5H1.6 provides that "[i]n sentencing a defendant . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." As noted above, the defendant has adduced no evidence suggesting that his familial situation is different from many other defendants in the illegal reentry context. Cf. United States v. Galante, 128 F.3d 788 (2d Cir. 1997) (en banc) (noting that a district court may not "depart downward in the absence of truly exceptional family circumstances"). Therefore, this argument is without merit.

The Honorable Thomas P. Griesa
December 15, 2010
Page 7 of 6

10635, 06 Cr. 250, 2008 WL 2117597, at *1 n.3 (S.D.N.Y. May 15, 2008); see also Guzman-Mogrovejo v. United States, No. 10 Civ. 4123, 2010 WL 3747885, at *1 (E.D.N.Y. Sept. 17, 2001); see generally Reno v. Koray, 515 U.S. 50, 61 (1995).

### Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the applicable Guidelines range, as such a sentencing would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Abigail S. Kurland
Assistant United States Attorney
Tel.: (212) 637-2396

cc:   Amelio Marino, Esq. (By Fax)